Good morning, your honors. I'm Ryan Haygood, an attorney with the NAACP Legal Defense Fund. I'm joined this morning by my co-counsel from University Legal Assistance at Gonzaga Law School. May it please the court. Five years ago, this court ruled in remanding this case to the district court that the plaintiffs here could establish a Section 2 violation by showing that Washington's felon disenfranchisement law interacts with racial discrimination in the criminal justice system to deny their votes on account of race. On remand, however, the district court failed to impose Section 2 liability, even though it found compelling evidence of racial discrimination in the criminal justice system that clearly hinders the ability of racial minorities to participate effectively in the political process. In holding that vote denial on account of race does not violate Section 2, the district court, for the second time in this action, issued a ruling fundamentally at odds with the plain language, history, and purpose of Section 2 of the Voting Rights Act. The district court reached this conclusion even as it found that plaintiff's evidence, which it distinguished from that proffered in Salt River, demonstrates that the statistical disparities present in Washington's criminal justice system both arise from and result in discrimination on account of race. The district court further found that plaintiff's expert's conclusions were admissible, relevant, and persuasive, and that significantly the defendants here failed to present any evidence to refute the findings of plaintiff's experts. Significantly, as the district court recognized, the interaction of Washington's felon disenfranchisement scheme with the state's criminal justice system and the racial discrimination therein operates to shift inequality into the political process. As a result, in Washington state, nearly one quarter, an incredible 24% of all black men, and 15% of Washington's entire black population have been disenfranchised following a felony conviction. Latinos who comprise less than 4% of Washington's citizen voting age population comprise 10% of those who've lost their voting rights following a felony conviction. Other Senate factors, principally the absence of a history of discrimination in voting, counterbalance plaintiff's compelling evidence of present-day racial discrimination in the criminal justice system, impacting racial minorities' ability to participate in the political process. In so doing, the district court both, one, misjudged the relevancy of the Senate's factors to a claim for vote denial, as opposed to a claim for vote dilution, and two, the district court failed to appreciate that this court's remand five years ago would have been entirely unnecessary if such factors could overcome a present-day finding of racial discrimination hindering the ability of racial minorities to participate effectively in the political process. Your Honors, this court made clear five years ago, in Farrakhan 1, that plaintiffs may establish a Section 2 violation by showing that based on the totality of the circumstances, Washington's felony disenfranchisement scheme results in discrimination on account of race. That is precisely what the district court found below. But instead, after finding discrimination at play in Washington State impacting the political process for racial minorities, the district court looked to other Senate factors undue its finding of racial discrimination. Nothing in Section 2 jurisprudence, both at the Supreme Court level and here in the Ninth Circuit's jurisprudence, condones such a result. This court held that Congress did not intend for the list of Senate factors to be comprehensive or exclusive. Neither did Congress require that any particular number of factors be proved, or that a majority of factors point one way or the other. Rather, Section 2's interactive and contextual totality of the circumstances analysis allows for the Senate factors to be considered, factor by factor, applying only those factors relevant to the particular case at hand. Here, the district court erred first by placing excessive weight on the absence of a history of discrimination in voting. What factors do you think are relevant once the court makes the finding that the discriminatory system in the criminal justice system results in discrimination on account of race? Well, Your Honor, this court held in Fair Count 1 that Senate factors 5 and 9 are particularly relevant to the plaintiff's claim. And, in fact, they were the only two factors that this court focused on in its remand. This court was clear in its remand that it wanted the district court to reassess, in light of the remand, wanted the district court to reassess plaintiff's evidence of discrimination in voting, which, beforehand, it had on its own determined was not relevant to a Section 2 totality of the circumstances analysis. So, here, Senate factors 5 and 9, which look at the policy reasons underlying Washington's filibustering, Of course, what does 5 and 9 really have to do with it? If the criminal justice system were biased and resulted, as you say, in the disqualification of a disproportionate number of minorities because of racial bias, and that then automatically resulted in the disqualification of a disproportionate number of minorities from voting, what does number 9 add to that or subtract from it? Your Honor, once Senate factors have been found under Senate factor 5, there's a showing of compelling evidence of racial discrimination impacting voting. There is a Voting Rights Act violation made there. But Senate factor 9 is probative of Washington's interests, Washington's policy justification. Is there a policy justification for discriminating in voting? I'm sorry, Your Honor? Is there a policy justification for discriminating in voting once you've made the finding? No, Your Honor. But, as I mentioned, the Senate factors were intended by Congress to be advisory and allow courts to look at what they call a list of typical factors to determine whether there's been a Section 2 violation. Here, as this Court recognized in Fair Comm. 1, Senate factors 5 and 9 are relevant to plaintiff's claim under Section 2 of the Voting Rights Act. There seems to be some dispute, at least in the red brief from the government, that on the issue of causation, that there's still some ongoing discovery dispute as to whether the plaintiff's provided the requested documentation. Could you elaborate on that? Sure, Your Honor. That's not accurate at all. We responded to each of their discovery requests. And, in fact, as the District Court recognized in its opinion, there is no issue of material fact in dispute on this record. This Court has before it all it needs to rule in plaintiff's favor. As the District Court recognized... Yes, Your Honor? Does your statement that there's no material fact in dispute apply to... You made a motion for summary judgment also, right? Yes, Your Honor. Does it apply to your motion as well as to the State's motion that there's no fact in dispute? Your Honor, there is no material issue of fact in dispute as to our motion, but there is a genuine issue of material fact in dispute as to the defendant's motion. And what's that material issue? Well, they would allege that the evidence that we put on the record is reflective merely of disparities alone. But our contention is that race plays an impermissible role in the application of Washington's felon disenfranchisement scheme. And that is that racial minorities are overrepresented at every stage of Washington's criminal justice system. Just unpack that a little bit, because when you have dueling motions for summary judgment, if either side is right about a material issue, it doesn't really matter who moved for summary judgment because you have a material issue. So they'll have a chance, of course, to argue about whether they have a material issue or not. But they've made that allegation, so I don't think it's enough to simply say, but on our motion, there is no allegation. As a matter of law, there either is or isn't. So would you address what you think they have alleged is their material issue and why it is or is not a material issue? Sure. Well, I wouldn't like to note, Your Honor, that under Local Rule 56.1b, it was the defendant's burden to set forth specific facts that they allege constitute a genuine issue of material fact separately. Correct. Which they did not do. As far as your motion is concerned. I'm sorry? As far as your motion was concerned. Yes, Your Honor. Now, for our motion, so we would argue, Your Honor, that there is no issue of genuine issue of material fact because they did not respond as they were required to on our motion. So under Local Rule 56.1b, setting forth specific facts that they allege constitute a genuine issue of material fact as to our motion. As to their motion, we set forth separately specific facts which we allege establish a genuine issue of material fact as to their motion. I will concede, Your Honor, that the district court's opinion appears to consider only their motion for summary judgment and doesn't appear to consider ours, though they were cross motions for summary judgment. Well, he does. He does deny your motion, doesn't he? He does, Your Honor. But the discussion is all geared. Toward the defendant's motion. Yes, Your Honor. Correct. Either way, Your Honor, we contend that this court has before it all it needs to rule in favor of the plaintiffs on our motion for summary judgment. As the district court recognized below, the defendants failed to present any evidence to refute the compelling findings of plaintiffs' experts' witnesses. And, as we mentioned in our briefs, the defendants failed even to set forth specific facts that they allege constitute a genuine issue of material fact as to our motion, which, as I mentioned, was their burden under Local Rule 56.1b. So we would argue that this court should affirm the district court's findings of compelling evidence of racial discrimination in the criminal justice system, impacting voting, and find that plaintiffs … There is one question as to affirming their finding. The finding is based on viewing the evidence in a light most favorable to the nonmovements. Who are the nonmovements for the purposes of that statement? I'm sorry, Your Honor? Who are the nonmovements for the purposes of the court's finding that it's viewing the evidence in a light most favorable to the nonmovements? Well, that's a good question. In our case, the district court below found that Senate Factor V weighed in our favor for purposes of their motion. I know, but I guess we're kind of back to this material fact issue, because if you take it in the light most favorable to the nonmoving party, which, in their motion, is you, and your motion is them, okay, then how can there really be a finding that's binding? I mean, it can't really be a finding unless, of course, there's no material issue of fact. But you're taking it in the light most favorable. So how does that sort itself out here as an evidentiary matter? Well, Your Honor, as I understand some of your judgment motions, where there isn't an issue of material fact in dispute, meaning the other side doesn't contest. So, for example, in this case, defendants don't contest the findings of our plaintiffs, which the district court considered compelling. And then he made the connection himself that this compelling evidence of discrimination in voting clearly impacts racial minority – I'm sorry, in the criminal justice system, clearly impacts racial minorities in the political process. That finding was not disputed by the defendants in this case. And so it seems that since there's no issue of material fact in dispute, we'd be entitled to summary judgment. As I was mentioning, Your Honor, the district court failed by placing excessive weight on the absence of a history of discrimination in voting. But the first Senate factor, like all Senate factors, is relevant only to the extent that it sheds light on the question of whether, as a result of the challenge practice, plaintiffs do not have an equal opportunity to participate in the political process and to elect candidates of their choice. But here, the discriminatory effects of Washington's felon disenfranchisement scheme are clear. Thus, resorting to the history is not informative under the totality of the circumstances. And the Supreme Court recognized as much in jingles when it held that the first Senate factor is informative but not essential to a minority voter's claim under Section 2 of the Voting Rights Act. Indeed, Congress intended for Section 2, unlike Section 5 of the Voting Rights Act, to apply nationwide without a regard to the history of a particular jurisdiction. So it's not practical, then, for the absence of a history of discrimination to trump the presence of racial bias in the modern day. In fact, Your Honor, this court in Gomez v. City of Watsonville filed Section 2 liability even as it recognized that the first and fifth Senate factors didn't weigh in the plaintiffs' favor in that case. Indeed, the court there was troubled by the district court's emphasis on the first Senate factor and believed that it may have placed too much emphasis on the plaintiffs' ability to prove intentional discrimination, which Section 2 doesn't require. In another case, Black Political Task Force v. Galvin, the court there found Section 2 liability even as it recognized that none of the enumerated Senate factors assisted in its totality of the circumstances analysis. And there, the court found Section 2 liability after placing most of the weight on a factor that wasn't listed in the Senate report at all, which is the extent to which race was used as a tool to achieve incumbency protection. The truth is that these cases reflect courts giving first Senate factors proper weight, which is precisely what the district court failed to do here. Secondly, the district court erred by considering irrelevant Senate factors and disregarding relevant ones. It conceded that Senate factors 2, 3, 4, and 6 aren't relevant to plaintiff's vote denial claim, but proceeded to consider them anyway. One other question on statistical disproportionality, and I guess it depends on how one characterizes the evidence, but as I understood, one of their arguments is that your expert evidence, which they view as statistical disproportionality, would not, as a matter of law, be sufficient to determine whether the plaintiff's claim is true. It would be sufficient to show causation. I may not completely understand their argument, but I think that's it. And it would be helpful to me to hear how that plays out in this summary judgment. Sure, Your Honor. I appreciate the question. This Court held in FAIR Con 1 that causation can be shown where the discriminatory impact of a law is attributable to racial discrimination in the surrounding social and historical circumstances. Here, what our experts have shown is that the over-representation of racial minorities at every stage of Washington's criminal justice system is not warranted by or reflective of their actual participation in crime. So our experts have taken similarly situated people of varying ethnicities and controlled for legally relevant variables, including offense seriousness, prior criminal histories, and aggravating factors where appropriate, and found that even after controlling for legally relevant variables, race matters in the administration of criminal justice in Washington State and, consequently, matters in the application of Washington's felon disenfranchisement scheme to disproportionately deny the rights of people of all ethnicities. The defendants, for their part, have sort of articulated the same rhetoric over the course of this litigation, which is that we've only shown statistics alone. But as the district court recognized in distinguishing our case from Salt River, what we've shown is that Washington's criminal justice system and the disparities therein are reflective of discrimination on account of race. The district court recognized that they both arise from and result in discrimination on account of race. So that the argument that what we've shown are statistical disparities alone is hollowed out because the district court judge closest to our case recognized that our racial disparities here tell the story of racial discrimination. How much time do you intend to save for rebuttal? Two minutes, Your Honor. Actually, I guess I can reserve the remainder for rebuttal. Thank you. You may have placed the court. I am Carol Murphy, Deputy Solicitor General representing the State of Washington. Plaintiff's claims are not cognizable because Congress never intended the VRA to cover felon disenfranchisement laws. However, the proper test to determine whether a state regulation violates the VRA is to determine whether a state regulation violates the VRA. Is there a totality of circumstances test? Counsel, let me ask you what I asked counsel before. Assuming Section 2 applies to felon disenfranchisement cases and assuming that as a matter of fact, the state's criminal justice system discriminates against minorities, as the court found, so that the higher number of minority felons resulting from racial discrimination, that there is a higher number, what other factors should the court consider before determining that a felon disenfranchisement statute results in a denial or abetment of the right to vote on account of race? First of all, I disagree with Your Honor's characterization of the district court's findings. But assuming that that were true. Assuming. Right. Assuming that the district court made a factual finding, then what would be needed is a meeting of the results test. So 1973B states that a violation of subsection A of this section is established in, based on the totality of circumstances, based upon the totality of circumstances, if it is shown that the political processes leading to nomination or election in the state or political subdivision are not equally open to participation by members of a class of citizens protected by subsection A, in that its members have less opportunity than members of the electorate to participate in the political process and elect representatives of its choice. Now, I realize this is a mouthful, but that is the test. But what is the answer to my question? If, as a matter of fact, there are more blacks disqualified from voting because of racial bias in the criminal justice system, what else do you need to prove that the felon disenfranchisement law works adversely to blacks on account of race? What you need is the connection between felon status and voting, and we have no evidence of that here. In fact, That's what I don't understand. What does that mean? Let's say 50% of the blacks are disqualified from voting because of race, because the statute says if you're a felon, you can't vote. 50% of blacks are disqualified because you automatically apply the 50% figure of blacks who are felons. There's nothing to do once you decide that 50% are felons, and that's the result of racial discrimination. What else do you need when that 50% is disqualified from voting automatically? What we don't have is the connection between felon status and voting. Give us an example. I mean, what would be proof of a connection? Well, it's similar. Hypothetically. Well, not so hypothetically. Let's take the Blaine case where there was a connection, and going to the Senate factors and going to the test, again, it requires that members of the class of citizens protected have less opportunity than other members of the electorate to participate in the political process and elect representatives of their choice. That means something. What it means is even using the plaintiff's numbers, using the plaintiff's numbers, which, by the way, they have no citation to, but on page two of their brief, 15% of the black population of the state is. Let's just assume facts for this answer. Right. Let's assume 50% of the blacks are disqualified because they're felons. They become felons because of a racially discriminatory system. And those 50% of the blacks are then automatically disqualified from voting. Right. Because of racial discrimination. Assuming the facts in your question, they still have not met their burden in this case because there is no evidence in this case that of those remaining, of those members of the minority group is what's being tested in the test. It's not the percentage of felons. It's the percentage of the minority group. So this is a we're talking about a statute that disqualifies felons. Absolutely, Your Honor. And it disqualifies felons because of racial discrimination. That's why felons are disqualified. It's the assumption. That's the assumption in the question. And assuming that, you still have 85% using their numbers, 85% of the members of the minority group at issue that have the ability to elect representatives of their choice. They're not serious. So that 15%, as long as you exclude a small number, not too big, not too small, then it's okay? I'm not saying it's okay. I'm just saying that's what their evidence, that's what they claim that their evidence shows. I'm not saying. Their evidence, then. We'll just say 15% of, and I think in this case it was the black population when he was talking about his numbers, 15%, whether it's because of, in this case, felon disenfranchisement or some other law that somebody might have passed, they don't get to vote. And they don't get to vote because they're felons. And it's been, and assumed, it's been shown that disproportionately they became categorized as a felon because of race. What's missing there? How would you show that? What would, if you had this evidence, and as a creative lawyer, what do you think is missing to show the connection? What's missing is that racial minorities at issue vote as a bloc, that they are unable to elect representatives of their choice, that they are, that they, as a bloc of voters, this is the Voting Rights Act. Does that go to the cause? Cause is the test, Your Honor. I know that. I think we all agree at least on that. Cause is the test. But how is that, whether they vote on the bloc, how is that evidence of a cause? Say if, we'll say Hispanics, did not vote on the bloc, there's no cause? But if they do vote on the bloc, there's cause? Is that what you're saying? I'm saying they must. As far as a vote denial case is concerned. Is that what you're saying? A claim under the VRA requires that that group be denied the right to vote based on race. That group. So that. So you're saying if 90% of them are not disenfranchised, then it's okay. I'm not saying it's okay. I'm talking about the evidence required. And the evidence required. Evidence required, it must, it can't, it's not a question of just putting it in the record. It must be in the record for some purpose. And your purpose is, as I understand it, as long as you're only disqualifying 10% or 15%, it's okay. And particularly if they don't vote as a bloc. If they. If they split their vote 50-50 between the Republicans and the Democrats, then it's okay to disqualify them because of race. It is a violation of the Voting Rights Act only if the denial of the right to vote is a result of race discrimination. Well, so that's what it is. That's what we're assuming, that they are being denied the right to vote because they're felons. And the law that disqualifies them is based on race. That's what we're assuming are the facts. So what else do you need? And you say, well, you've got to show that they don't vote as a bloc, or you've got to show that that's a large percentage of the black population. I guess the problem that I have with your hypothetical is if your hypothetical is that felons are discriminated against on the basis of race and therefore denied the right to vote based on race, you're stating the test. So your hypothetical assumes that the test was met. The hypothetical is that they become felons because of racial discrimination. It's not my hypothetical. It's what the judge found. I disagree with that characterization, Your Honor. What characterization? The characterization that the district judge made a finding of fact. What the district court did is looked at the evidence and agreed with Washington's assertion that the plaintiffs have not met their burden to show that there was a denial of the right to vote based upon race. Okay, so let me just stop and make a very simple hypothetical. No, he said based on the totality of the circumstance. Yes, yes, yes. If the evidence showed that Washington State never arrested white people for felonies, they only arrested black people. So your whole felon population is black. But luckily, it's not all the black. It's only 15 percent of the blacks. But they don't ever arrest white people. 15 percent of the blacks are felons. And only blacks are felons. And so these 15 percent can't vote. What would they need to show in your view to allege, not necessarily completely prove, but to allege a prima facie case under the Voting Rights Act? If the facts were that, Your Honor, I think I would be hard-pressed to say that there would be no other evidence of intentional discrimination. Intentional discrimination is a cause of action under the 14th Amendment. So the plaintiffs would have a cause of action if that were the case. Because the evidence in that case, I doubt, would have anything that would show that there was no intentional discrimination, if the numbers were that far. But that's not even remotely what we have in this case. Then you move the facts and you say there's certainly no intent. But the result, you know, let's not have, we'll have some whites thrown in that get to be felons. The result is a highly disproportionate number of the felons are blacks, in large disproportion to their presence in the population. And assuming that you don't have experts that show that as, you know, that the analysis is faulty or the numbers are faulty, wouldn't they have at least alleged for purposes of summary judgment sufficient to get by a summary judgment motion? Assuming that you could state a claim under the VRA to challenge felonies and franchises. I understand you disagree. I mean, half the judges agree with you and half don't. In the country, it seems. You know, I mean, they seem to be kind of even more or less split on this issue. So I'm taking that as I understand your argument on that. And I would respectfully disagree with the court's analysis. So there's half and half, but, well, some number. Anyway. So what you're saying is that it's all in those what I'll call front-end numbers, in other words. That's where you would target whether or not you've been able to make a case as to what's the result of the determination of how felons or how blacks became felons. Well, what we would expect to have is an expert witness that testifies as to causation for these numbers. The disparity is not even remotely as has been stated by the plaintiffs. In fact, on page 9 of their appellate brief, they cite to the Washington Sentencing Guidelines Commission reports, which they issue yearly, entitled Disproportionality and Disparity Report, because they care about disproportionality. And instead of these numbers of 22 to 19 percent that we've been looking at, the latest reports show more of a disparity of 13 percent versus close to 4 percent of blacks in the community at large. So when I hear that, I can't make any judgment other than to say it looks like a factual issue to me. That, to me, kind of cries out factual issues. I think that's exactly correct. But their argument was, and this would be helpful to me to understand, the argument was, well, on our, meaning the plaintiff's motion for summary judgment, the State didn't put in any list of disputed facts, and you've just given me what might be a disputed fact, and that is a disparity in the disparities. So could you respond to that argument? Yes, and I disagree that there's a dispute of material fact. What we did in response to their motion for summary judgment is pointed out quite specifically the holes and the gaps in their evidence, most of which is admitted to by their experts. For instance, the expert report of Dr. Crutchfield states that there is no evidence of systematic statewide racial profiling in traffic stops in the state of Washington, no evidence of police racial profiling, ER 208. But when I hear that, too, when you have an expert thing, I go, well, that goes to the weight of the evidence if you actually had a trial, doesn't it? So in other words, you get to say, you know, Dr. So-and-so, you didn't consider this, and there's these eight things that make up the felony component, and you don't have any of that in your evidence, and then you'd have to say yes or no or whatever. And then you go, I mean, he's admitted as an expert. Maybe he has not a very good report. I don't know. But isn't that a trial issue? It's not, Your Honor, and I'll explain why. Putting it in the situation that you described, if you have a car accident and then you have a personal injury lawsuit following that car accident, the plaintiff is injured in that car accident, the doctor submits a report, and an expert report that says broken arm. The broken arm, in my expert opinion as a doctor, resulted from injuries suffered in that car accident. That's what we would expect to see in plaintiff's evidence in this case. We would expect to see a report from Dr. Crutchfield, from Dr. Beckett, from these experts that says the numbers are explained by a racial motive, by a racial cause. They're caused by race discrimination. That isn't present in any of the reports. Nobody says that. They may say, in fact, Beckett says that... Let me ask you this question. You say there's no dispute of fact. Does that mean that either you went on summary judgment or they went on summary judgment? Yes. And there's no in-between? Well, certainly there's no in-between if you consider that felon disenfranchisement doesn't state a claim under the VRA. No, no, no. But even under evidence, even getting to the evidence question, summary judgment is appropriate because the plaintiffs have failed to meet their... Either party. If you lose on your summary judgment motion, they should win on their summary judgment. No, Your Honor, because the evidence is inadequate to meet the test of a violation. I know you think that, but I just asked you the question a second ago. Is it summary judgment for one side or the other? Is that... If your summary judgment motion is wrong and the court says, no, you're not entitled to summary judgment, then we have a cross motion for summary judgment. That's exactly right. If there's no factual issue, though, therefore, they would then get summary judgment. There's no factual issue. Let's assume a court's wrong. It's wrong in denying your motion. Then it would have to grant the plaintiff's motion if there's no factual issue. There are no factual issues. I see no... You think it's a question of... What you're saying now, I think you're saying, is that the status of their evidence is such that as a matter of law, they couldn't win. That's correct, Your Honor, and that was how we responded to their motion for summary judgment, relying on the specific portions of their experts' reports and deposition testimony that limit significantly this evidence that they use sweeping terms to say that every step of Washington's criminal justice system is discriminatory. That is not supported by the record whatsoever. Going through the excerpts of record in this case, the expert reports and the deposition testimony show the extreme limitations of the testimony that was provided. That's now... I'm right back where I started. When I hear that, I mean, in a lot of complicated cases like antitrust and other cases where you're using experts, statistical studies, modeling, and things like that, but when you hear that kind of argument, what it often means is, well, you disagree with their conclusion, or even if their conclusion supports their claim, it doesn't support it enough, I keep thinking, well, that's really a factual issue. I don't know. I'm not sure how I credit your argument without making a substantive judgment on the evidence. I have two responses to that. Number one is back to the standing argument. None of the plaintiffs in this case have shown that their convictions, their felon status relates in any way to any racial bias or discrimination. And second of all, the evidence in the case must match what is being challenged. So if this were a challenge to, let's say, hypothetically, Professor Beckett writes this report saying that the concentration on outdoor drug venues is what causes this disparity in the numbers. That's her report. I mean, that's her conclusion. It has nothing to do with racial bias. It has to do with the concentration on outdoor drug venues. So let's say the plaintiff's claim in this case were not a challenge to felon disenfranchisement, but a challenge to the concentration on outdoor drug venues, and that connects with felon disenfranchisement to deny the right to vote based upon race. Then you would have the evidence potentially matching the claim in the case. We do not have that here because the claim is to felon disenfranchisement generally, not to anything specific. Again, there are other hurdles related to that claim, but that's where the evidence matches a particular potential claim in this case. But it doesn't when you're challenging all of felon disenfranchisement. I mean, the overwhelming evidence is that the majority of felons in the state of Washington are white. And when you look at the remedy that is sought by the plaintiffs in this case, it is taking a sledgehammer to the problem as opposed to a scalpel. Well, I guess that's another question I have is that if you went to trial, you know, of course everyone asks for the moon to start with. They want the whole felon disenfranchisement laws to be struck down. But the remedy would follow the evidence, whatever the evidence would be. Assuming they were able to make all the connections. And the remedy might be narrower because, in fact, what was shown was not, you know, the whole bottle of wax, but some aspect of the felony system that was, in fact, racially motivated and therefore S to X. So I'm wondering, it's almost like you're making them win before they get a chance to make their case on the remedy. Well, do you want to argue something about remedy? That if, for instance, with a literacy test, that the law as a whole is not struck down, just certain people who are illiterate should be entitled to vote and not others? Is that what you're saying? With the felon disenfranchisement statute, if the statute is invalid, you have to go beyond that? If the statute is discriminatory, that there's more to it than just striking it down? Well, literacy tests are covered by a different section, so that's not an issue here. I know, but I mean, does it matter whether the statute wants it to be a discriminatory statute? Do you say parts of it apply sometimes and not others? Is that your argument? The statute is not discriminatory on its face. And so what the district court did is it inappropriately extrapolated pieces of evidence to make a broad finding, and that was the error of the district court in the evidence here. All right. Thank you. Your Honors, five years ago in Ferricon 1, this court held that to the extent that racial discrimination in the criminal justice system increases the rate at which racial minorities are convicted of felony offenses, such discrimination clearly hinders their ability to participate in the political process and to elect candidates of their choice. On remand, plaintiffs assembled an impressive host of experts who showed that racial discrimination is at play in the administration of Washington's criminal justice system and that it impacts racial minorities' ability to participate meaningfully in the political process. As the district court recognized in his opinion, he held that he recognized that the court has no doubt that members of racial minorities have experienced discrimination in the criminal justice system. If the denial or abridgment of one citizen's right to vote on account of race established a Section 2 violation, this court would find for the plaintiffs in this matter. The district court's... So let me stop you right there. So you're saying that if they could prove one Hispanic or one black person was arrested because of racial motivation, then you could strike down the whole disenfranchisement statute? Your Honor, first of all, the Supreme Court recognized in Shaw v. Hunt that the Voting Rights Act applies to individuals, not only to groups. And the remedy, I think, using the Supreme Court's ruling in Hunter v. Underwood is instructive, where the Supreme Court... That's not really answering my question. I mean, if you had a plaintiff who was that guy, that would be one thing. But you're just saying if there's one person, that that meets your burden? Your Honor, we have six people here. But the truth of the matter is that the plain language of Section 2 of the Voting Rights Act applies to any citizen who has been denied the vote on account of race. But what we argue here, Your Honor, is that the district court got it wrong in holding that the Voting Rights Act doesn't apply to one citizen. It does apply to one citizen. What does that have to do with the issue we have now, whether the act applies to one citizen? I thought your case here was that there's a discriminatory effect on blacks in the Washington criminal justice system, not that one black has been discriminated against. You're right, Your Honor. Our challenge is to the manner in which racial discrimination is infected with the criminal justice system, impacting racial minorities. But I point out this example here just to say that the district court did find a Section 2 violation, but then he suggested that the VRA doesn't apply to a particular citizen. Mr. Hagin, answer this question for me. If you were to prevail on the issue of, you know, was the VRA violated or is it violated by this felon disenfranchisement law, what remedy do you seek? Your Honor, the remedy here would be the same as was applied in Hunter v. Underwood, that this court would have to enjoin the application of Washington's felon disenfranchisement scheme because, as our experts pointed out, the application of Washington's felon disenfranchisement scheme operates in a discriminatory fashion on account of race. As a district court recognized, it cannot stand. So you want that prohibition to be totally, totally done away with, right? Yes, Your Honor. And I think that's what the Voting Rights Act calls for. The plain language of the Voting Rights Act holds that no voting qualification or prerequisite to voting or standard practice or procedure shall be imposed by any state in any manner that denies the right to vote to any citizen on account of race. And with respect to race, if you didn't have statistics as to, say, for example, Vietnamese or Filipino residents, it would be struck down as to them as well? That's right, Your Honor. That's right. And, in fact, that was the... I assume as to white voters also. Yes, Your Honor. And, in fact, that was the remedy afforded by the Supreme Court in Hunter v. Underwood, which it struck down Alabama's felon disenfranchisement scheme because it discriminated against blacks and also was struck down as it applied to whites. That would be the appropriate remedy under Section 2 in this case. Thank you, Ken. Thanks, Your Honor. Case disargued is submitted. The Court will stand in recess for the day.
judges: Reinhardt, Tashima, McKeown